IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

DARRYL JONES, as surviving       Shelby Circuit No. 47678 T.D.
next of kin of GOLDIE JONES,       C.A. No. 02A01-9602-CV-00038
Deceased,

     Plaintiff,

v.                      Hon. Robert L. Childers

DANA A. WATSON and
SHEREE WATSON,

     Defendants.



FILED

Dec. 11, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

ERICH W. JAMES and GEORGE E. SKOUTERIS, SR., Memphis, Attorneys for Plaintiff.

JOHN D. RICHARDSON and KEVIN COMBS, The Richardson Law Firm, Memphis,
Attorneys for Defendants.

*REVERSED AND REMANDED*

Opinion filed:

_____

TOMLIN, Sr. J.

      Darryl Jones (hereafter "Plaintiff") filed suit in the Circuit Court of Shelby

County against Dana A. Watson and Sheree Watson (hereafter "Defendants") to

recover damages for the wrongful death of his wife, Goldie Jones, as a result of a motor

vehicle accident. Defendants were insured by Allstate Insurance Company ( hereafter

"Allstate"). Allstate ultimately entered into a settlement agreement with plaintiff and

pursuant thereto issued not one but two consecutive settlement checks to plaintiff.

Because the son of the deceased wife incorrectly filed a wrongful death action on his

own behalf, plaintiff was prevented from consummating the settlement agreement with

Allstate. Some three years after plaintiff's suit had been filed, defendants filed a

motion to dismiss on the grounds that plaintiff had failed to comply with Rules 3 and 4

T.R.C.P. in that defendants had not been served with process, nor had an alias summons

been issued, nor had the action been recommenced within one year of the date of the

issuance of the original process, thus plaintiff's claim was barred by the one year statute

of limitations. The trial court granted the defendants' motion to dismiss. The sole

issue presented by plaintiff on appeal is whether the trial court erred in so doing. We

find that it did and reverse.

The facts are really not in dispute. Goldie Jones was involved in automobile accident with a vehicle driven by Dana A. Watson. She later died from injuries received in that accident. Her husband, plaintiff herein, filed suit against Dana A. Watson and her employer, Sheree Watson, seeking to recover damages for the wrongful death of his wife. The vehicle being driven by Dana Watson was registered in Sheree Watson's name. This vehicle was insured by Allstate. After plaintiff learned that his wife was on or about her employer's business at the time of the accident, he also filed a worker's compensation death claim against General Accident Insurance Company of America ("General Accident"), defendant Sheree Watson's worker's compensation carrier.

General Accident accepted the deceased wife's claim as a compensable one, and paid all medical expenses. General Accident at that time refused to pay compensation death benefits on the ground that plaintiff was not a dependent. Later, in September 1991, plaintiff ascertained that defendants had no other assets out of which a wrongful death claim could be satisfied and agreed to settle with Allstate for the policy limits of twenty-five thousand dollars ($25,000.00). In that same month Allstate issued the first of two settlement checks in the amount of twenty-five thousand dollars ($25,000.00) to plaintiff with the notation "Final Settlement of Any and All Bodily Injury Claims Arising From Accident on 8/6/91."

Shortly thereafter, General Accident advised plaintiff that they would be defending the worker's compensation death claim brought by plaintiff and that plaintiff should refrain from compromising any claim that plaintiff might have against defendants that could affect General Accident's right of subrogation. Because of this, plaintiff was prevented from giving Allstate a complete release regarding the accident claim. As of this time General Accident had not ascertained that defendants were, in effect, "judgment proof", and did not have any assets from which General Accident might seek reimbursement for any funds paid by it to plaintiff as a result of this accident.

2

In addition, General Accident was contesting plaintiff's suit against it wherein he sought worker's compensation death benefits. In that contested litigation, the trial court found that plaintiff was indeed a dependent of wife and was entitled to thirty-five dollars and ninety one cents ($35.91) per week for four hundred weeks. In the worker's compensation case, plaintiff appealed to the Supreme Court the issue of whether the trial court erred in limiting his benefits to only four hundred weeks. During the course of this litigation, General Accident repeatedly advised counsel for plaintiff that plaintiff should not compromise any possible subrogation claim that it, General Accident, might have against Allstate. As a result plaintiff was further precluded from executing settlement papers with Allstate concerning its offer.

In May 1992, inasmuch as the original check given plaintiff by Allstate in settlement of plaintiff's claim had not been negotiated prior to its date of expiration, Allstate issued a second check, also with a maturity date of six months, to plaintiff for its policy limits of twenty-five thousand dollars ($25,000.00). We will have more to say about this later.

Thereafter, our Supreme Court reversed the trial court in the worker's compensation proceeding, and held that plaintiff was entitled to the maximum benefits of one hundred seventeen thousand, six hundred dollars ($117,600.00), and was not limited to a four hundred week compensation period. (See Jones v. General Accident Ins. Co. of America, 856 S.W.2d 133 (Tenn. 1993)). Upon reaching the conclusion that defendants had few if any assets upon which General Accident might levy an execution, General Accident advised plaintiff that he could proceed and finalize his settlement with Allstate, including the execution of any releases.

The previously filed wrongful death action filed by the deceased wife's son (hereafter "Polk") had placed Allstate in a predicament as to whether to pay plaintiff or Polk. Notwithstanding the fact that in May 1992 Allstate had issued its second check to plaintiff in an effort to settle this wrongful death claim, in November 1992, Allstate wrote letters to the attorneys representing plaintiff, Polk and General Accident,

3

whereby it proposed to pay the twenty-five thousand dollars ($25,000.00) into court in exchange for a full release from all three parties. This move was unsuccessful.

Sometime thereafter, Allstate filed its motion for summary judgment against Polk and a motion to dismiss against plaintiff in order to bring this matter to closure. The trial court treated Allstate's motion against plaintiff as a motion for summary judgment which was subsequently granted.

Defendant contends that plaintiff failed to comply with the provisions of Rule 3 T.R.C.P., specifically as it pertains to the issuance of new process in a timely manner, after it had been determined that there was no service of original process, and having failed to do so resulted in plaintiff's claim being barred by the statute of limitations. The provisions of Rule 3 as it existed at the time this action was filed is as follows:

> All civil actions are commenced by filing a complaint with the Court. An action is commenced within the meaning of any statute of limitations upon such a filing of a complaint, whether process be returned served or unserved; but if the process is not served or not returned within 30 days from issuance, regardless of the reason, plaintiff, if he wishes to rely upon the original commencement as a bar to the running of the statute of limitations, must either prosecute and continue the action by applying for or obtaining issuance of new process from time to time, each new process to be obtained within six months from issuance of the previous one, or plaintiff must recommence the action within one year from the issuance of the initial process not served or not returned within 30 days from issuance.

The record reflects that plaintiff's wife was injured in the automobile accident in question on August 6, 1991 and died from the injuries sustained therein some four days later. Following employment by plaintiff in that same month, counsel for plaintiff began negotiations with Allstate, defendant's insurer, in late August, 1991. At that time, Allstate furnished plaintiff's counsel with a copy of the defendant's policy declaration with Allstate showing coverage in the amount of $25,000. In late September 1991, plaintiff and Allstate agreed to settle the wrongful death action for Allstate's policy limits of $25,000. Allstate issued a check to plaintiff and his counsel dated September 30, 1991 in the amount of $25,000, that stated on its face: "In Payment of Final Settlement of Any and All Bodily Injury Claims Arising From Accident on

4

8/6/91." This check also provided on its face that it was void if not presented within one hundred eighty days of the date of issuance.

On April 22, 1992 Allstate issued another check for $25,000 payable to plaintiff and his counsel. The purpose of issuing this check contained on its face the same language as the earlier check of September, 1991. During this same period, General Accident continued to refuse to release defendants and Allstate on its subrogation claim.

On July 27, 1992 Allstate, on its fax stationery, sent plaintiff's counsel a message regarding the "Goldie Jones" claim, from "Vickie Harris, Allstate Claims." The message read as follows:

> "George, This note confirms that Goldie Jones claim was settled for bodily injury in the amt of $25,000.00. The check was written on 4/22/92. It is good until 10/22/92. If you need it reissued after that date, let me know. (s)Vickie Harris"

Two days later, on July 29, 1992, within one year of the date of the fatal accident, plaintiff's counsel filed a wrongful death action on behalf of plaintiff against defendants Watson. Process was issued that same date for Sheree Watson. It was returned by the Sheriff's Department of Shelby County "not found" on August 20, 1992. There is nothing in the record to indicate that an alias summons was issued thereafter.

In Sparks v. Metro Government of Nashville and Davidson County, 771 S.W.2d 430 (Tenn. App. 1989), and relied upon by defendants, this court discussed the applicability of the doctrine of equitable estoppel when applied to the statute of limitations. The court therein stated:

> Where by promises or appearances one party is induced to believe that the other party is going to pay a claim or otherwise satisfy the claims of the first party, and in reliance on that representation the first party delays filing suit within the applicable statute of limitations, the party making the representations may be estopped to raise the statute of limitations as a defense. Id. at 433.

\*\*\*\*

5

The doctrine [of equitable estoppel] is, of course, most clearly applicable where the aggrieved parties' delay in bringing suit was caused by his opponent's intentional misrepresentation; but deceit is not an essential element of estoppel. It is sufficient that the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire. Id. at 433. *Quoting* City of Bedford v. James Leffel & Co., 558 F.2d 216, 218 (4th Cir. 1977).

In Sparks, the court found that an essential element, that of reliance, was missing, noting that plaintiff had rejected multiple offers made by defendant to complete the repair work done on plaintiff's house. The court stated: "We are of the opinion that [plaintiff] cannot reject an offer of completion of the contract and then say that she relied on that promise to her detriment."

In the case under consideration the facts are substantially different. This record clearly demonstrates that Allstate issued its check to plaintiff and his counsel for the full amount of its policy limits with its insured defendant indicating thereon that it was in full payment of Goldie Jones' claim against the Allstate insured as a result of this accident. Such a check was issued not once, but twice. In addition, an Allstate claims representative confirmed by letter not that negotiations were continuing, but that a settlement had in fact been made and in addition thereto, offered to reissue the check in the future should the then current check not be negotiated prior to the deadline stated thereon. There is nothing in this record in the way of affidavits or otherwise on the part of Allstate indicating that settlement negotiations were still ongoing.

It appears to this court that almost four years after the initial settlement check was issued by Allstate, it sought to play the game of "Gotcha", in filing and pursuing to conclusion its motion to dismiss. We are of the opinion that defendants under these facts are equitably estopped from asserting that plaintiff's cause of action is barred by the applicable statute of limitations for failure to comply with the provisions of Rules 3 and 4 T.R.C.P..

Accordingly, the judgment of the trial court dismissing plaintiff's cause of action against defendants is reversed. This cause is remanded to the Circuit Court of Shelby County for further proceedings not inconsistent with this opinion. Costs on appeal are

taxed to defendants, for which execution may issue if necessary.

_____
TOMLIN, Sr. J.

_____
CRAWFORD, P. J.                    (CONCURS)

_____
HIGHERS, J.                        (CONCURS)

TOMLIN, Sr. J.